IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
DISTRICT COURT
INDIANAPOLIS DIVISION

2012 JUN 13  PM 2: 55

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

|  |  |  |
|---|---|---|
| SEEMA NAYAK, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *vs.* | ) | Cause No. _____ |
| | ) | |
| ST. VINCENT HOSPITAL AND | ) | |
| HEALTH CARE CENTER, INC. | ) | |
| | ) | **1:12 -cv- 0 8 1 7 RLY -MJD** |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

Plaintiff Seema Nayak, by counsel, for her Complaint for Damages and Demand for Trial

by Jury states as follows:

## I. INTRODUCTION

1.      This is an action brought by SEEMA NAYAK, M.D. ("Dr. Nayak") against ST.

VINCENT HOSPITAL AND HEALTH CARE CENTER, INC. ("St. Vincent") between which

parties there was an employment relationship.  St. Vincent violated Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, ("Title VII") by discriminating against and

harassing Dr. Nayak on the basis of her national origin, Indian, and her gender, female.

St. Vincent also violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

("ADA"), as amended by ADA Amendments Act of 2008 ("ADAAA"), by terminating Dr.

Nayak's employment relationship and failing to accommodate her disability.  St. Vincent acted

deliberately and violated the civil rights of Dr. Nayak on the basis of her disability.  St. Vincent

violated Dr. Nayak's rights by retaliating against Dr. Nayak after she invoked her federally

protected rights under Title VII in violation of 42 U.S.C. § 2000e-3 and the ADA in violation of

42 U.S.C. § 12203.

## II. EEOC COMPLIANCE

2.      Dr. Nayak exhausted all of the administrative proceedings available to her by timely filing a Charge of Discrimination on the basis of national origin, sex, disability and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC").

3.      Dr. Nayak filed a Charge of Discrimination with the EEOC on or about October 18, 2010.  A copy of Dr. Nayak's Charge is attached hereto and marked as Exhibit 1.

4.      Dr. Nayak's Charge was timely filed in compliance with 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

5.      Dr. Nayak received a Dismissal and Notice of Right to Sue on March 15, 2012, which was dated March 14, 2012.  A true and accurate copy of the Dismissal and Notice of Right to Sue is attached hereto and marked as Exhibit 2.

6.      This action was timely filed within ninety (90) days of receipt by Dr. Nayak of the Dismissal and Notice of Right to Sue.

## III. JURISDICTION

7.      Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, and 1343, and 42 U.S.C. § 2000e-2.

8.      This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-3, and the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*. The retaliation claim is authorized and instituted pursuant to 42 U.S.C. § 2000e-3 and 42 U.S.C. § 12203.

9.      Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 2000e-5(f) and (g), and 42 U.S.C. § 12117.

10.     The alleged discriminatory acts were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

## IV. **VENUE**

11.     At all relevant times, Dr. Nayak was a resident of Hamilton County in the State of Indiana.

12.     Defendant St. Vincent Hospital and Health Care Center, Inc. is located in Marion County, Indiana.  St. Vincent is a corporation authorized to do business in the State of Indiana.

13.     The discriminatory acts under Title VII and the ADA alleged below arose in Marion County, Indiana.  Marion County is located in the Southern District of Indiana; thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the defendant resides or in which the cause of action arose.

## V. **PLAINTIFF**

14.     Plaintiff Seema Nayak was, at all times relevant to this Complaint, a resident of Hamilton County in the State of Indiana.

15.     Dr. Nayak was born in 1974.

16.     Dr. Nayak is female and of Indian national origin.

17.     Dr. Nayak is a person entitled to protection under Title VII and the ADA.

## VI. **DEFENDANTS**

18.     Defendant St. Vincent Hospital and Health Care Center, Inc. is now, and was at all times relevant to this action, an Indiana corporation doing business in the State of Indiana providing medical care.  St. Vincent's principal executive office is located at 2001 West 86th Street, P.O. Box 40970, Indianapolis, IN 46260.

19.     At all times relevant to this action, Defendant employed Dr. Nayak.

3

## VII. **STATEMENT OF FACTS** .

20.     Dr. Nayak's gender is female and her national origin is Indian.

21.     On July 1, 2007, Dr. Nayak matriculated into the Obstetrics and Gynecology ("OB/GYN") residency program as a first-year resident ("PGY-1") at St. Vincent.

22.     On July 1, 2008, Dr. Nayak was promoted to the PGY-2 year of her residency.

23.     During Dr. Nayak's PGY-1 year and second-year resident status ("PGY-2"), Dr. Nayak met or exceeded St. Vincent's performance standards and won several academic awards, including earning the highest score on the national CREOG examination in both years and receiving the Best Case Report award during her PGY-1 year.

24.     During Dr. Nayak's employment at St. Vincent, other residents discriminated against her and treated her differently due to her accent and Indian national origin.

25.     Dr. Nayak reported that behavior to Dr. Eric Strand ("Dr. Strand"), the Program Director for St. Vincent's OB/GYN Residency Program, who advised her to take on additional work to win over the other residents.

26.     Furthermore, Dr. Strand became directly involved when Dr. Jody Freyre ("Dr. Freyre"), a more senior resident, subjected Dr. Nayak to a hostile work environment by harassing her on the basis of her national origin.

27.     St. Vincent also assigned and required Dr. Nayak to work with a cultural coach, who, after a couple of sessions, indicated that Dr. Nayak was fine and didn't need any coaching.

28.     Dr. Nayak attempted to modify her communication style, but the difficulties persisted.

29.     Upon information and belief, the offending employees were neither counseled nor disciplined for their actions toward Dr. Nayak.

30.     Following her February 6, 2009 evaluation, Dr. Nayak began experiencing physical impairments relating to her pregnancy.

31.     Accordingly, in March 2009 and April 2009, Dr. Nayak received negative feedback and evaluations during the period she was experiencing morning sickness and other pregnancy-related issues.

32.     On May 11, 2009, Dr. Nayak was given a letter stating she would be promoted to third-year residency status ("PGY-3") on July 1, 2009 upon successful completion of the remaining two (2) months of her PGY-2 year and indicating that she "continue[d] to demonstrate a competent level of performance." A copy of this letter is attached hereto as Exhibit 3.

33.     Dr. Nayak experienced further pregnancy complications and was placed on complete bed rest on May 15, 2009.

34.     In August 2009, one of Dr. Nayak's unborn twin babies passed away.

35.     While Dr. Nayak was on medical leave, Dr. Strand repeatedly visited her hospital room, including when she was in the hospital for the passing of her unborn twin baby, or contacted her at home to pressure her to return to work as soon as possible and threatened to withdraw Dr. Nayak from the residency program if she did not return quickly; on one occasion, he asked her if she would be willing to come back to work if her baby was born prematurely and still in NICU.

36.     On November 11, 2009, Dr. Nayak underwent a caesarean section delivery.

37.     Three days after Dr. Nayak's delivery, Dr. Strand told Dr. Nayak she would be placed on the schedule to return to work in six (6) weeks and that her employment would be terminated if she did not return at that time.

38.     Dr. Strand also directed Dr. Nayak to send handwritten thank-you notes to fellow residents for taking on Dr. Nayak's work load during her medical leave, even though other residents who took medical leaves were not directed to do so.

39.     As a result of Dr. Nayak's pregnancy complications, she experienced severe post-partum difficulties, including symphysis pubis dysfunction, which required her to undergo physical therapy before returning to work.

40.     On the insistence of Dr. Nayak's physician, Dr. Strand permitted Dr. Nayak to take the customary eight (8) week maternity leave following her caesarean section delivery.

41.     On December 10, 2009, Dr. Strand sent a letter to Dr. Nayak placing new and unrealistic conditions on her return to work given that Dr. Nayak had been off work on medical leave for a period of seven (7) months; this letter is in contrast to the November 11, 2009 letter Dr. Strand initially wrote when Dr. Nayak was expected to return six (6) weeks after her delivery.  Copies of both letters are attached hereto as Exhibits 4 and 5, respectively.

42.     On December 28, 2009, Dr. Nayak returned to work at St. Vincent and was immediately placed on a difficult PGY-3 rotation, rather than the PGY-2 rotation as promised in Dr. Strand's November letter.

43.     Dr. Nayak was also placed under the supervision of Dr. Freyre, a resident with whom Dr. Nayak had previous personal difficulties.

44.     On January 13, 2010, after Dr. Freyre made complaints about Dr. Nayak's performance during her first week back from medical leave, Dr. Strand placed Dr. Nayak on probation and failed to assign Dr. Nayak a mentor.

45.     Additionally, Dr. Strand failed to bring Dr. Nayak's probation before the Residency Education Committee for review until five (5) months had passed, despite the fact that Dr. Nayak's probation was to be reviewed after three (3) months.

6

46.     On May 14, 2010, during a Residency Education Committee meeting, the Committee decided unanimously not to renew Dr. Nayak's contract, even though days before the meeting, Dr. Strand approached Dr. Nayak and informed her that he had received positive feedback from a number of faculty and staff regarding her improvement since returning to work and that he would mention that in the meeting.

47.     Additionally, prior to the meeting, Dr. Lori Buzzetti, the Associate Program Director, mentioned to Dr. Nayak that things were going her way.

48.     Dr. Nayak was not given any reason for the non-renewal and was not given advance notice that renewal of her contract was at issue; rather, Dr. Nayak was only told that her probationary status would be discussed.

49.     Dr. Nayak's contract was set to expire less than sixty (60) days from the date of that meeting, even though the Accreditation Council for Graduate Medical Education ("ACGME") requires that residents be given 120 days advance notice of non-renewal.

50.     Upon information and belief, Dr. Strand manipulated the meeting agenda, which caused a substantial number of physicians who had worked with Dr. Nayak extensively and could attest to her improvement and positive performance since her return from leave to be unaware that Dr. Nayak's contract renewal would be discussed.

51.     Dr. Nayak requested reasons for the decision in writing, and, in response, Dr. Strand sent her brief details of discussions from the Residency Education Committee meeting indicating Dr. Nayak had problems interacting with students, other residents and staff, and a couple of instances where Dr. Nayak allegedly made incorrect decisions.

52.     Dr. Nayak appealed the decision not to renew her contract to the Residency Education Committee.

53.     At her appeal meeting, upon information and belief, Dr. Strand manipulated the voting process to ensure that those who supported Dr. Nayak were underrepresented and that those who supported Dr. Strand's position were given additional votes.

54.     As a result, Dr. Strand's decision not to renew Dr. Nayak's contract was narrowly affirmed on May 28, 2010.

55.     On June 30, 2010, Dr. Strand stated in correspondence to the American Board of Obstetrics and Gynecology that the decision not to renew Dr. Nayak's contract was "[d]ue to a medically complicated pregnancy and significant concerns regarding her academic progress." A copy of this correspondence is attached hereto as Exhibit 6.

56.     On June 30, 2010, Dr. Nayak's employment contract with St. Vincent expired.

57.     As a direct and proximate result of the foregoing conduct:

    (a)     Dr. Nayak incurred and continues to incur a substantial loss of past, present and future income;

    (b)     Dr. Nayak has suffered damage to her career;

    (c)     Dr. Nayak has suffered mental and physical anguish; and

    (d)     Dr. Nayak has incurred additional financial losses, including the costs associated with invoking her federally protected civil rights.

## VIII. <u>STATEMENT OF CLAIMS</u>

### COUNT I
*(National Origin Discrimination and Harassment)*

58.     Dr. Nayak incorporates the allegations of paragraphs 1 through 57 above and, in addition, states that St. Vincent discriminated against her on the basis of her national origin, Indian.

59.     Dr. Nayak was born in India and her national origin is Indian. This is a protected class.

60.    It is clear from Dr. Nayak's name, physical features, and communication skills that she was not born in the United States and is Indian.

61.    On June 30, 2010, Dr. Nayak's residency contract with St. Vincent expired after the Residency Education Committee made the decision not to renew Dr. Nayak's contract less than sixty (60) days prior.  This was an adverse employment action.

62.    Dr. Nayak's communication skills were identified as needing improvement in various evaluations she received and in Dr. Strand's synopsis of the Residency Education Committee meeting on Dr. Nayak's contract; this reference necessarily implicates her national origin.

63.    St. Vincent and employees of St. Vincent treated similarly situated employees outside of the protected class more favorably.

64.    Furthermore, other employees of St. Vincent harassed and bullied Dr. Nayak due to her accent and Indian national origin.

65.    St. Vincent failed to prevent or correct this unlawful harassment after Dr. Nayak reported it to her supervisor, Dr. Strand.

66.    St. Vincent violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, by discriminating against Dr. Nayak and by allowing other St. Vincent employees to unlawfully harass Dr. Nayak on the basis of her national origin, Indian.

67.    As a result of the foregoing acts and omissions, Dr. Nayak is entitled to injunctive relief requiring St. Vincent to adopt and utilize reasonable procedures to adequately and truthfully address, investigate, and/or prevent the occurrence of national origin discrimination, in as much as St. Vincent's procedures pose an imminent threat of injury and actual damages sustained by Dr. Nayak.

## COUNT II
### *(Gender Discrimination)*

68.     Dr. Nayak incorporates herein the allegations set forth in paragraphs 1 through 67 above and, in addition, states that St. Vincent discriminated against her on the basis of her gender.

69.     St. Vincent is engaged in an industry affecting commerce, as defined in Title VII, 42 U.S.C. § 2000e(g).  St. Vincent employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. Therefore, St. Vincent is "an employer" within the meaning of 42 U.S.C. § 2000e(b).   St. Vincent is being sued under Title VII for damages and injunctive relief.

70.     Dr. Nayak is a member of a protected class.

71.     Throughout her employment, Dr. Nayak met or exceeded her employer's legitimate work expectations, including receiving several academic awards during her first two (2) years of residency.

72.     St. Vincent discriminated against Dr. Nayak based on her gender by subjecting Dr. Nayak to a hostile work environment after she suffered pregnancy-related complications resulting in extended medical leave.

73.     Dr. Nayak suffered an adverse employment action, probation, after she returned to work from pregnancy-related medical leave.

74.     Dr. Nayak was treated differently than other similarly situated male employees.

75.     As a result of Defendant's discriminatory acts, Dr. Nayak has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until the Court grants relief.

## COUNT III
*(Retaliation Under Title VII)*

76.     Dr. Nayak incorporates herein the allegations set forth in paragraphs 1 through 75 above and, in addition, states that St. Vincent retaliated against her when she complained of a hostile work environment.

77.     Dr. Nayak made complaints to Dr. Strand regarding the hostile work environment to which she was subjected based on her Indian national origin and her complicated pregnancy. This was protected activity.

78.     In retaliation for Dr. Nayak having made her complaints to Dr. Strand, St. Vincent decided not to renew Dr. Nayak's residency contract.

79.     Dr. Nayak was qualified to continue her employment with St. Vincent as an OB/GYN resident and renewal would have been the next logical progression in her career path at St. Vincent.

80.     This was adverse action based on Dr. Nayak's complaint.

81.     As a result of St. Vincent's retaliatory acts, Dr. Nayak has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief.

## COUNT IV
*(Discrimination under the Americans with Disabilities Act)*

82.     Dr. Nayak incorporates the allegations of paragraphs 1 through 81 above and, in addition, states that St. Vincent's acts and omissions in this matter discriminated against her because of her disability, her record of disability, and/or being regarded as having a disability in violation of the ADA.

83.     Defendant is engaged in an industry affecting commerce.

84.    Defendant has employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

85.    Defendant is an "employer" within the meaning of Section 101 of the ADA, 42 U.S.C. § 12111(5)(a).

86.    Dr. Nayak at all times relevant herein suffered an impairment that substantially limited one or more major life activities, including working.

87.    Furthermore, Dr. Nayak at all times relevant herein had the requisite skill, experience, education and other job-related requirements of the position she held with Defendant.

88.    Consequently, Dr. Nayak is a qualified individual with a disability under 42 U.S.C. § 12111(8).

89.    Dr. Nayak is disabled within the meaning of the ADA; that is, she has an impairment, has a record of, and/or is regarded as having an impairment that substantially limits a major life activity.

90.    At all times relevant herein, St. Vincent was aware of Dr. Nayak's disability and her need for a reasonable accommodation.

91.    St. Vincent intentionally discriminated against Dr. Nayak when it failed to provide reasonable accommodation for her and decided not to renew her employment contract, therefore terminating her employment because of her disability in violation of the ADA.

92.    St. Vincent's termination of Dr. Nayak's employment was an adverse employment action taken against her because of her disability.

93.    One reason given for Dr. Nayak's termination was "a medically complicated pregnancy" and constitutes disability discrimination.

12

94.     As a result of Defendant's discriminatory acts and omissions, Dr. Nayak has suffered and will continue to suffer monetary damages and damages for mental anguish unless and until the Court grants relief.

## COUNT IV
*(Retaliation Under the Americans with Disabilities Act)*

95.     Dr. Nayak incorporates the allegations of paragraphs 1 through 94 above, and, in addition, states that St. Vincent retaliated against Dr. Nayak following her complaints and requests for accommodation under the ADA.

96.     Dr. Nayak requested reasonable and customary accommodations, such medical leave for pregnancy complications and an eight (8) week maternity leave after her caesarian section delivery, from St. Vincent because of her disability.

97.     When. Vincent initially would not accommodate Dr. Nayak's disability, she complained to her supervisor, Dr. Strand; this was protected activity.

98.     St. Vincent made it impossible for Dr. Nayak to perform her job to St. Vincent's satisfaction because it refused to reasonably accommodate her disability and instead imposed unrealistic conditions upon her employment and put her on a rigorous residency rotation immediately after her return from medical leave.

99.     Because Dr. Nayak requested reasonable accommodation under the ADA, St. Vincent imposed onerous conditions upon her employment and, eventually, terminated her employment by deciding not to renew her residency contract; this was adverse action against Dr. Nayak.

100.    St. Vincent retaliated against Dr. Nayak when it took this adverse action against her by terminating her for exercising her ADA rights in violation of 42 U.S.C. § 12112(b)(5).

13

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Seema Nayak prays for a judgment in her favor against Defendant St. Vincent, and prays that the following relief be awarded:

(a) Grant a permanent injunction enjoining St. Vincent, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in national origin or gender discrimination and any other employment practice which discriminates on the basis of national origin or gender, and from engaging in retaliation.

(b) Grant a permanent injunction enjoining St. Vincent, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination and any other employment practice which discriminates on the basis of disability, and from engaging in retaliation.

(c) Order St. Vincent to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals, and which eradicate the effects of its past and present unlawful employment practices.

(d) Order St. Vincent to make whole Dr. Nayak by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Dr. Nayak's pecuniary losses.

(e) Order St. Vincent to make whole Dr. Nayak by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

(f) Order St. Vincent to make whole Dr. Nayak by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices

14

complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life and humiliation, in amounts to be determined at trial.

(g) Order St. Vincent to pay Dr. Nayak punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

(h) Order St. Vincent to pay Dr. Nayak her special damages, in amounts to be determined at trial.

(i) Order St. Vincent to pay damages to Dr. Nayak for any and all injuries to her career, in amounts to be determined at trial.

(j) Award Dr. Nayak the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper and equitable.

(k) Grant such further relief as the Court deems necessary and proper in the public interest.

## X.   RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## XI.   JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Kevin W. Betz, Attorney No. 14188-82
Sandra L. Blevins, Attorney No. 19646-49
Melissa A. Gardner, Atty. No. 29920-49

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com