UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SEEMA NAYAK M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:12-cv-00817-RLY-DML |
| | ) | |
| ST. VINCENT HOSPITAL AND | ) | |
| HEALTH CARE CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY**

This case arises out of St. Vincent Hospital and Health Care Center, Inc.'s decision to terminate the residency contract of Seema Nayak, M.D., following her extended medical leave. This matter is set for trial on November 17, 2014, for a jury to finally resolve Plaintiff's claims alleging that St. Vincent's decision was not the result of her poor performance, but was instead the product of gender and disability discrimination and retaliation. St. Vincent now moves to exclude Plaintiff's non-retained experts, Angela Stevens, M.D. and Kelly Manahan, M.D., for Plaintiff's alleged failure to disclose a sufficient summary of their expected testimony consistent with Federal Rule of Civil Procedure 26(a)(2)(C). St. Vincent also moves to exclude the testimony of Plaintiff's retained expert, Suja Mathew, M.D., who opines on various personnel decisions made by St. Vincent, on grounds that Dr. Mathew is not qualified to render

1

such opinions, and her opinions are unreliable. For the reasons set forth below, St. Vincent's motion is **GRANTED** in part and **DENIED** in part.

## I. Rule 26(a)(2)(C)

Federal Rule of Civil Procedure 26(a)(2)(A), as amended in 2010, requires that expert witnesses provide certain disclosures to the opposing party. Non-retained experts, like Dr. Stevens and Dr. Manahan, must provide a summary disclosure in compliance with Rule 26(a)(2)(C). *Ballinger v. Casey's General Store, Inc.*, 1:10-cv-1439, 2012 WL 1099823, at *3 (S.D. Ind. March 29, 2012) (citing the committee's notes to the Rule). The disclosure must include:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C). The advisory committee's notes state that "[t]his disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)" for retained experts. Notwithstanding the minimal requirements imposed by the Rule, St. Vincent claims the disclosures submitted by Dr. Stevens and Dr. Manahan were deficient and should be excluded.

### A. Dr. Stevens

Dr. Stevens is an OB/GYN at St. Vincent, and was Plaintiff's treating physician from 2008 to 2010. Plaintiff's disclosure explains that Dr. Stevens is "expected to testify regarding her treatment and observations of [Plaintiff] during both of her pregnancies, miscarriages and post-partum periods." (Filing No. 113-2 at 1, ¶ 3). She is also

"expected to testify concerning the serious medical complications that arose during and subsequent to [Plaintiff's] second pregnancy, including her decision to place [Plaintiff] on bed rest in May 2010 and to extend [Plaintiff's] post-partum leave from six (6) to eight (8) weeks in December 2010." (*Id.* ¶ 4). The disclosure indicates that a copy of Dr. Stevens' deposition was attached; St. Vincent claims it was not.

St. Vincent argues that Plaintiff's disclosure of Dr. Stevens' expected trial testimony is inadequate and analogous to the disclosure stricken in *Nicastle v. Adams Cnty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 U.S. Dist. LEXIS 46567 (D. Colo. Apr. 29, 2011). In *Nicastle*, the district court found the plaintiff's disclosure of his non-retained experts insufficient where the disclosures stated that each of the witnesses will testify as an expert "consistent with all matters raised in his . . . deposition." *Id.* at *7. The depositions of each of the witnesses were taken before the witnesses were designated as experts, and "the designations gave no indication of what topics addressed in the day-long depositions of each of the witnesses might be the subject of purported expert testimony." *Id.* at *7-8.

*Nicastle* does not compel the court to exclude her testimony. Dr. Stevens' deposition lasted three hours, and Plaintiff specifically disclosed the topics upon which she will testify, as noted above. Instead, Dr. Stevens' disclosure is similar to the one discussed in *Nagle v. Mink*, No. 10-cv-01935-PAB-MEH, 2011 U.S. Dist. LEXIS 97781 (D. Colo. Aug. 29, 2010). There, the district court found plaintiff's Rule 26(a)(2)(C) disclosure sufficient where his non-retained treating physicians were expected to "provide an opinion on Plaintiff's diagnosis of diabetes . . . , how diabetes affects a

3

person's major life activity, specifically one's ability to work," and "how diabetes has affected the Plaintiff." *Id.* at *2. In addition, the disclosure stated that their testimony was based on a review of Plaintiff's medical history, specific conversation with the Plaintiff and their own experience as treating physicians who diagnose and treat diabetes. *Id.* at *3.

Similarly here, Dr. Stevens is expected to give testimony regarding her treatment and observations of Plaintiff while under her medical care and the reason why she decided to place Plaintiff on bed rest and to extend her medical leave from 6 to 8 weeks. The court finds Plaintiff's disclosure of Dr. Stevens' testimony meets the minimal requirements of Rule 26(a)(2)(C).

Even if Plaintiff's disclosure was inadequate, the court finds the lack of disclosure is harmless. Fed. R. Civ. P. 37(c)(1) (an inadequate disclosure does not compel the exclusion of the witness's testimony if the "failure is substantially justified or harmless"). Plaintiff represents that, during Dr. Stevens' deposition, she informed St. Vincent that Dr. Stevens would likely be named an expert because she was Plaintiff's treating physician. A copy of her deposition should be in the possession of St. Vincent, as it cited Dr. Stevens' deposition in its Reply in support of its Motion for Summary Judgment. Her expected testimony should be no surprise to St. Vincent. Accordingly, St. Vincent's motion to exclude Dr. Stevens' testimony is **DENIED**.

**B.    Dr. Manahan**

Between 2003 and 2008, Dr. Manahan served as a teaching faculty member at St.

Vincent's OB/GYN Residency Program under Dr. Strand[1], and currently serves as the Residency Program Director for the University of Toledo's OB/GYN Program. Dr. Manahan's Rule 26(a)(2)(C) disclosure states that she "is expected to testify regarding [Plaintiff's] acceptable performance as a resident at the University of Toledo" and her "observations of the deficiencies in St. Vincent's OB/GYN Residency Program under Dr. Strand." (Filing No. 113-2 at 2, ¶ 11).

St. Vincent moves to exclude Dr. Manahan's testimony because: (1) Plaintiff's disclosure fails to disclose the facts or data on which Dr. Manahan bases her conclusion that there are "deficiencies" in St. Vincent's OB/GYN Residency Program; (2) Plaintiff's disclosure fails to explain the facts in support of Dr. Manahan's opinion that Plaintiff's performance was "acceptable"; and (3) Dr. Manahan's expected testimony regarding Plaintiff's performance at the University of Toledo is irrelevant.

Although the disclosure regarding Dr. Manahan's expected testimony is brief, it is not so scant as to warrant the exclusion of her testimony. Both Plaintiff and St. Vincent (in its Reply) agree that she is offering only fact testimony. To the extent St. Vincent seeks additional details regarding her expected testimony, it could easily depose her.

In an additional effort to strike her testimony (now as a fact witness), St. Vincent accuses Plaintiff of "impermissibly trying to sneak in a 'fact' witness that was not disclosed during discovery under the guise of an 'expert.'" (Filing No. 131 at 3). St. Vincent then notes that Plaintiff did not file her Final Witness list until February 14,

---

[1] Dr. Strand ran the OB/GYN Residency Program at the time Plaintiff was employed at St. Vincent.

2014, well after the September 12, 2013 discovery cutoff date. The court checked the docket in this case, and discovered that St. Vincent also filed its Final Exhibit List on February 14, 2014, consistent with the Magistrate Judge's Order dated December 17, 2013, extending the deadline for filing final witness and exhibit lists from January 15, 2014 to and including February 14, 2014. (Filing No. 74). It does not appear to the court that Plaintiff was engaging in any trickery. Dr. Manahan may testify as to any alleged deficiencies in St. Vincent's OB/GYN Residency Program that she observed while employed at St. Vincent.

The court further finds, however, that Dr. Manahan's expected testimony regarding Plaintiff's performance, while employed at the University of Toledo's OB/GYN Residency Program, is not relevant. Whether Plaintiff had acceptable performance under Dr. Manahan during Plaintiff's time at the University of Toledo is not indicative of her performance at St. Vincent, and has nothing to do with whether St. Vincent discriminated against Plaintiff on the basis of her gender, alleged disability, or alleged protected activity. Accordingly, St. Vincent's motion to exclude her testimony is **GRANTED** in part and **DENIED** in part.

**II.** *Daubert* **Challenge to Dr. Mathew's Testimony**

    **A.**     **Background**

Dr. Mathew completed medical school at the Pritzker School of Medicine in June 1997 and residency at The University of Chicago Hospitals in 2000. (Filing No. 113-1 at 10). Since 2008, Dr. Mathew has served as Program Director for the Internal Medicine Residency Program at the John H. Stroger, Jr. Hospital of Cook County in Chicago,

6

Illinois. (*Id*. at 1). As Program Director of the one of the largest internal medicine residency programs in the country, Dr. Mathew makes hiring, promotion, and remediation decisions for all of her trainees, under the advisement of the program's Promotion Committee, and has "constructed remediation and probation plans for residents who have experienced difficulty in ACGME (Accreditation Council for Graduate Medical Education)-defined competencies." (*Id*. at 1-2). She is "familiar with the competencies required of residents and the standards they must attain to complete their residencies." (*Id*. at 2). She is also "familiar with the standards required of a medical residency program and or a program director." (*Id*.).

Dr. Mathew opines regarding the deficiencies of St. Vincent's OB/GYN Residency Program and the deficiencies in the way St. Vincent handled Plaintiff's probationary period and termination. More specifically, she opines that:

- Dr. Strand's actions during Plaintiff's medical leave were inappropriate and an improper exercise of authority. As examples, she cites to Dr. Strand's visits to Plaintiff's hospital room following the death of her fetus, in which he asked her if she would be willing to return to work. Dr. Mathew found Dr. Strand's conduct inappropriate, against the standard practice of a residency program director, and indicative of animus.

- Dr. Strand's decision to place Plaintiff on a night float rotation reserved for third year residents when she returned from her 7.5 month medical leave was inappropriate under the circumstances. St. Vincent had previously informed her that she was returning as a second-year resident, "so it was grossly improper for St. Vincent to assign [Plaintiff] to perform work it had determined she was incapable of doing and evaluate her under the standards of a third-year resident."

- Dr. Strand did not have a sufficient basis to place Plaintiff on probation only two weeks after returning from an extended medical leave because his decision was based solely on the feedback from a resident with whom she had had difficulties in the past. His failure to get feedback from a neutral third party was against the usual and recommended practice of a residency program when conflict between

7

residents is known. In addition, Dr. Strand's criticism of Plaintiff for appearing "distracted, sad, and tearful" was "grossly inappropriate," especially since there was no evidence that patient care had been compromised.

- St. Vincent's failure to appoint an advisor for Plaintiff during her probation is contrary to the standard practices of residency programs.

- Dr. Strand's failure to conduct regular meetings with Plaintiff during her five-month probation, and instead meeting with her only once or twice, was "highly unusual" and "shows animus."

- St. Vincent's decision not to renew Plaintiff's contract was "grossly inappropriate" because: (1) Plaintiff's probation was conducted without sufficient process and without providing Plaintiff with crucial feedback; (2) St. Vincent gave Plaintiff only 60 days' notice of its decision not to renew her contract, and thus failed to comply with ACGME recommended protocol that requires a resident be given 120 days' notice of nonrenewal – a decision she found showed animus; and (3) Dr. Strand admitted in a letter that Plaintiff's termination was caused by "a medically complicated pregnancy."

### B. Standards Governing Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, a court "must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (internal quotation marks omitted).

The court serves a "gatekeeping" function to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "'The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary

8

system.'" *Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 949 (N.D. Ill. 2010) (quoting *Bullock v. Sheahan*, 519 F. Supp. 2d 760, 761 (N.D. Ill. 2007)). Moreover, the question of whether the expert is credible or whether the theories being applied by the expert are correct, is a "factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir. 2000) (citing *Walker v. Soo Line R.R.,* 208 F.3d 581, 589-90 (7th Cir. 2000)). As the proponent of the expert testimony at issue, Plaintiff has the burden of demonstrating its admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

### C. Merits of the Motion

St. Vincent argues Dr. Mathew's testimony regarding the propriety of St. Vincent's personnel decisions must be excluded because she is not qualified to give such an opinion, and her proposed testimony is unreliable.

An expert may be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Dr. Mathew has specialized knowledge and experience in the operation and affairs of residency programs. Dr. Mathew served as the Course Director of Pathophysiology for 7 years at Rush University, and served as the Program Director for Internal Medicine Training for 7 years, and the Associate Chair of Education in the Department of Medicine for 5 years at the Stroger Hospital of Cook County. (Filing No. 113-1 at 10). As noted above, she has experience in "hiring, firing, and remediation decisions" as well as "construct[ing] remediation and probation plans." (*Id.*

9

at 2). She is familiar with the standards required of a medical residency program and a program director, and based her opinion on the standard of care, ACGME guidelines, and St. Vincent's own guidelines. (*Id*. at 2, 10, and Ex. B). The court finds Dr. Mathew is qualified to give an opinion as to these subjects.

St. Vincent also objects that many of the personnel decisions made by St. Vincent (Dr. Strand) were "inappropriate" and exhibited "animus" toward Plaintiff. The court agrees that opinions on these issues should be excluded. Whether an action is "inappropriate" or exhibited "animus" is for the jury to determine. She may, however, testify as to whether Dr. Strand's actions were against the standard practice of a residency program director and whether St. Vincent's personnel decisions were against the standard practices of residency programs. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) (noting that an expert may "draw a conclusion from a set of observations based on extensive and specialized experience"). St. Vincent's motion to exclude her testimony is **DENIED**.

### III. Conclusion

St. Vincent's Motion to Exclude Plaintiff's Expert Testimony (Filing No. 112) is **GRANTED** in part, and **DENIED** in part. St. Vincent's Motion is **DENIED** with respect to Dr. Stevens' and Dr. Mathew's expected testimony; **DENIED** with respect to Dr. Manahan's expected testimony regarding her observations of St. Vincent's Residency Program; and **GRANTED** with respect to Dr. Manahan's testimony regarding Plaintiff's performance as a resident at the University of Toledo.

**SO ORDERED** this 30th day of September 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.